IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-254-D

TAMELA P. BARNES,           )
for T.J., a minor,          )
                            )
                Plaintiff,  )
                            )
        v.                  )        **ORDER**
                            )
CAROLYN W. COLVIN,          )
Acting Commissioner of Social Security,  )
                            )
                Defendant.  )

Tamela P. Barnes ("Barnes" or "plaintiff") challenges the final decision of defendant Acting

Commissioner of Social Security Carolyn W. Colvin ("Commissioner"), denying Barnes's

application for benefits on behalf of T.J., her minor child. The parties filed motions for judgment

on the pleadings [D.E. 25, 29], and memorandums in support [D.E. 26, 30]. As explained below,

the court grants the Commissioner's motion, denies Barnes's motion, and affirms the

Commissioner's final decision.

I.

On February 17, 2009, Barnes applied for benefits on behalf of T.J., her minor child.

Transcript of Proceedings ("Tr.") 138–140, 183. Barnes alleged that T.J. became disabled on June

5, 2008, due to attention deficit hyperactivity disorder ("ADHD"). Tr. 187. The Social Security

Administration ("SSA") determined that T.J. was not disabled and denied Barnes's application. Tr.

69, 75–78. Upon Barnes's request, the SSA reconsidered her application, but again denied it. Tr.

70, 84–87. Barnes then requested and received a hearing before an Administrative Law Judge

("ALJ"). Tr. 37–67. On October 21, 2010, the ALJ denied Barnes's claim. Tr. 15–32. Barnes timely sought review with the Appeals Council, to no avail. Tr. 1–5. Barnes timely sought judicial review under 42 U.S.C. § 405(g).

In reviewing the Commissioner's denial of benefits, a district court is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the Commissioner applied the correct legal standards. See 42 U.S.C. § 405(g); Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla of evidence but may be somewhat less than a preponderance. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). When reviewing for substantial evidence, the court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927(d)(2). To determine whether a decision is supported by substantial evidence, the court must determine whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997).

The Commissioner must follow a three-step process to determine whether an individual under the age of eighteen is disabled. The Commissioner asks, in sequence, whether the minor: (1) worked during the alleged period of disability; (2) has a severe impairment; and (3) has an impairment that meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a); see Bryant ex rel. Bryant v. Barnhart, 63 F. App'x 90, 92–93 (4th Cir. 2003) (unpublished). The claimant has the burden of production and proof at each of the three steps. See Dew ex rel. K.W. v. Colvin, No. 4:12-CV-129-D, 2013 WL 4523617, at *2 (E.D.N.C. Aug. 27,

2

2013) (unpublished); cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

In order to determine whether a minor's severe impairment functionally equals a listed impairment, the Commissioner must evaluate the minor's functional limitations in each of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself or herself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)–(vi). The Commissioner will conclude that the minor is disabled if the minor displays either "marked" limitations in two of these areas or an "extreme" limitation in one area. Id. § 416.926a(a). A "marked" limitation "seriously" interferes with the minor's ability to function in that area. Id. § 416.926a(e)(2). An "extreme" limitation "very seriously" interferes with the minor's ability to function in that area. Id. § 416.926a(e)(3).

At the hearing, the ALJ heard the testimony of Barnes, who was represented by counsel. Tr. 37–67. T.J., who was six years old at the time of the hearing, was present but did not testify. Id. Barnes's testimony primarily concerned T.J.'s limitations in three domains: attending and completing tasks, interacting and relating with others, and caring for himself. Tr. 65. In his closing argument, however, Barnes's attorney focused only on T.J.'s limitations in the first two domains, stating: "I think the two key domains, which I think would be the ones . . . that you would find at the marked level, [are] attending and completing tasks, and . . . interacting and relating with others." Tr. 66.

Following the prescribed three-step process, the ALJ found at step one that T.J. had never worked. Tr. 18. At step two, the ALJ found that T.J. had the severe impairment of ADHD. Id. At step three, the ALJ found that T.J.'s impairment did not meet or medically equal a listed impairment. Id. Given the absence of medical equivalence, the ALJ then evaluated T.J.'s functional limitations

3

in each of the six functional equivalence domains. Tr. 21–32. The ALJ concluded that T.J. did not display an extreme limitation in any area, see id., and that he displayed a marked limitation only in interacting and relating with others. Tr. 25–27. Accordingly, the ALJ found that T.J. was not disabled. Tr. 32.

In opposition to the ALJ's conclusions, Barnes makes two arguments. First, Barnes contends that the ALJ erred in failing to find that T.J. had a marked limitation in his ability to care for himself. See Pl.'s Br. [D.E. 26] 1–3. Had the ALJ concluded that T.J. displayed a marked limitation in this area, T.J. would have been considered disabled. See 20 C.F.R. § 416.926a(a) (providing that a minor will be considered disabled if he displays marked limitations in two of the six functional equivalence domains); Tr. 25–27 (concluding that T.J. has a marked limitation in his ability to interact and relate with others). Second, Barnes contends that the ALJ failed to conduct Craig v. Chater's two-step inquiry to evaluate whether T.J. actually suffers from the symptoms she described on his behalf. See Pl.'s Br. 3–4; Craig, 76 F.3d at 594–95. Specifically, Barnes claims that the ALJ made no finding as to whether T.J.'s medically documented impairments could cause the symptoms she described. See Pl.'s Br. 3. As part of this argument, Barnes also claims that the ALJ failed to evaluate the credibility of her testimony. See id.

An ALJ evaluates a child claimant's functional limitations in his ability to care for himself by considering how well the child maintains a healthy emotional and physical state in comparison to a child his age without an impairment. Specifically, the ALJ considers the child's ability to get his physical and emotional wants and needs met in appropriate ways, how the child copes with stress and changes in his environment, and whether the child takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The Social Security Act's implementing regulations provide that a child between the ages of three and six "should want to take care of many of [his] physical

4

needs by [himself]" and "should also begin to understand how to control behaviors that are not good for [him]." Id. § 416.926a(k)(2)(iii). A six-year-old child "should be independent in most day-to-day activities," such as dressing and bathing himself, but may need the occasional reminder from a caregiver. Id. § 416.926a(k)(2)(iv). A child of that age should also "begin to demonstrate consistent control over [his] behavior" and "be able to avoid behaviors that are unsafe or otherwise not good for [him]." Id.

Substantial evidence supports the ALJ's conclusion that T.J. does not have a marked limitation in his ability to care for himself. In reaching this conclusion, the ALJ considered the consistent opinions of four medical sources, T.J.'s pediatrician and three Disability Determination Services ("DDS") psychologists. See Tr. 30. T.J.'s pediatrician observed that T.J. "[k]nows what to do when hungry or tired", "dresses and undresses [him]self", "brushes [his] teeth with toothpaste", and "can wash and dry [his] hands and face." Tr. 250. Relying on these observations and other record evidence, three DDS psychologists concluded that T.J. has less than a marked limitation in his ability to care for himself. Tr. 309, 403, 447. The ALJ also considered the consistent opinions of T.J.'s teachers, Tr. 29–30, both of whom reported that T.J. had "no problems" taking care of his personal hygiene and caring for physical needs, including dressing and eating. Tr. 170, 199.

More generally, the ALJ concluded that T.J.'s ADHD was responsive to treatment with medication and psychotherapy and that T.J.'s symptoms were not as intractable as Barnes alleged. Tr. 31. The ALJ based this conclusion on T.J.'s progress notes from B.E.A.R.S., Inc., where T.J. received treatment for ADHD from January 2008 through August 2010. Tr. 31, 48, 312–400, 408–443, 451–533. Those notes indicate that T.J. "experienc[es] issues primarily when [Barnes] forgets to administer [his] medication." Tr. 340. Similarly, one of T.J.'s teachers observed that T.J. is "a lot calmer when he has had his medicine." Tr. 200. Finally, Barnes testified that T.J.'s

medication "helped him a lot" and "ke[pt] him calm," Tr. 46–47, and her testimony is consistent

with her statements to B.E.A.R.S., Inc. counselors. See, e.g., Tr. 459 ("Caregiver believes the

intensity and duration [of T.J.'s tantrums have] decreased since change in medication regimen.").

A symptom is not disabling if it can reasonably be controlled by medication or treatment. Gross v.

Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); see Bryant, 63 F. App'x at 95; Stewart v. Apfel, 182

F.3d 909, 1999 WL 485862, at *4–5 (4th Cir. 1999) (per curiam) (unpublished table decision);

Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984); Lamb ex rel. J.P. v. Astrue, No. 2:11-CV-

40-D, 2012 WL 3595115, at *3 (E.D.N.C. Aug. 20, 2012) (unpublished); cf. 20 C.F.R.

§ 416.930(a)–(b).

To the extent that T.J.'s teachers observed that T.J. did not demonstrate consistent control

over his behavior, see Tr. 170, 199, substantial evidence supports the ALJ's conclusion that Barnes's

parenting style contributed to T.J.'s problems in this area. See Tr. 31. Both Barnes's testimony and

progress notes from B.E.A.R.S., Inc. indicate that T.J. often acted out at home with no consequences.

See, e.g., Tr. 59, 426, 430, 439, 443. Accordingly, counselors at B.E.A.R.S., Inc. advised Barnes

on the importance of disciplining T.J. on a consistent basis and setting boundaries with him. See,

e.g., Tr. 342, 434, 459. One counselor noted that when Barnes did discipline T.J. before one of their

sessions, T.J. appeared unusually calm. See Tr. 386. T.J.'s pediatrician also discussed good

parenting practices and discipline with Barnes. See Tr. 251.

Swimming against this evidentiary tide, Barnes cites a questionnaire in which one of T.J.'s

teachers indicated that he had "very serious" problems handling frustration appropriately, identifying

and appropriately asserting emotional needs, responding appropriately to changes in his own mood,

and using appropriate coping skills to meet the daily demands of a school environment. See Pl.'s

Br. 2; Tr. 199. Barnes attempts to equate the term "very serious" in the questionnaire with the

6

meaning of "extreme" limitation under the Social Security Act's implementing regulations. See Pl.'s Br. 2. The terms "marked" and "extreme" limitations, however, "are defined in the [regulations] and carry precise meanings." Bryant, 63 F. App'x at 94; see 20 C.F.R. § 416.926a(e)(2)–(3). As discussed, nothing in the record suggests that T.J. suffers from a marked limitation, much less an extreme limitation, in his ability to care for himself. Indeed, Barnes's attorney said as much at T.J.'s hearing. See Tr. 65–66. Rather, the record reflects that any problems T.J. experiences in this area—including "very serious" problems—can be addressed with medication and discipline.

In sum, the ALJ concluded that T.J. had less than a marked limitation in his ability to care for himself after considering the opinions of four medical sources and T.J.'s teachers, Barnes's testimony, and progress notes from counselors who treated T.J. for ADHD. Because substantial evidence supports the ALJ's conclusion, the court rejects Barnes's first challenge to the Commissioner's final decision. See, e.g., Lamb, 2012 WL 3595115, at *3–4; Espinoza ex rel. Hannah v. Astrue, No. 7:08-CV-14-D(3), 2008 WL 5087671, at *2, *8 (E.D.N.C. Nov. 25, 2008) (unpublished).

Next, Barnes claims that the ALJ improperly evaluated T.J.'s symptoms under Craig's two-step inquiry. See Pl.'s Br. 3–4. Craig requires the ALJ to determine whether the claimant's medically documented impairments could reasonably cause the claimant's alleged symptoms, and then to evaluate the claimant's statements about those symptoms. Craig, 76 F.3d at 594–95. If the claimant is a child who does not describe, or cannot adequately describe, his symptoms, the ALJ "will accept as a statement of [the child's] symptom(s) the description given by the person who is most familiar with [the child], such as a parent, other relative, or guardian." 20 C.F.R. § 416.928(a). "The ALJ must make specific findings concerning the credibility of the [caregiver's] testimony, just as he would if the child were testifying." Dew, 2013 WL 4523617, at *8 (alteration in original)

(quotations omitted). If the ALJ does not find the claimant's statements credible, the ALJ must cite "specific reasons supported by evidence in the case" for that finding. Lawson v. Astrue, No. 7:06-CV-124-D, 2008 WL 111155, at *5 (E.D.N.C. Jan. 8, 2008); see Soc. Sec. R. 96-7p, 1996 WL 374186, at *1 n.1, *4 (July 2, 1996).

Barnes contends that the ALJ erred by failing to make an express finding that T.J.'s medically documented impairments could reasonably cause his alleged symptoms. See Pl.'s Br. 3. The lack of an express finding at Craig's first step, however, "does not constitute reversible error if the ALJ cites . . . substantial evidence to support his overall finding" on the claimant's subjective statements about his symptoms. Hester v. Astrue, No. 7:07-CV-125-D, 2008 WL 7663940, at *9 (E.D.N.C. Aug. 11, 2008) (unpublished) (quotations omitted); see Fisher v. Barnhart, 181 F. App'x 359, 363 (4th Cir. 2006) (per curiam) (unpublished); Nelson v. Apfel, 166 F.3d 333, 1998 WL 879588, at *3 (4th Cir. 1998) (per curiam) (unpublished table decision); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Basu-Dugan v. Astrue, No. 1:06CV00007, 2008 WL 3413296, at *3 (M.D.N.C. Aug. 8, 2008) (unpublished); Zane v. Astrue, No. 7:06-CV-164-D, 2008 WL 345620, at *14 (E.D.N.C. Feb. 5, 2008) (unpublished); Ketcher v. Apfel, 68 F. Supp. 2d 629, 650–51 (D. Md. 1999). As discussed, the ALJ cited substantial evidence to support his finding that T.J.'s symptoms are not as intractable as Barnes alleged, including Barnes's testimony. Accordingly, the ALJ did not commit reversible error at step one of Craig's two-step inquiry.

Nor did the ALJ "fail[] to assess [Barnes's] credibility at all." Pl.'s Br. 3. The ALJ noted the inconsistencies between Barnes's statements on various function reports, see Tr. 31, and between Barnes's statements and those of T.J.'s teachers. See Tr. 31–32. The ALJ also noted that Barnes admitted to not disciplining T.J. or setting boundaries with him. See Tr. 31. These observations satisfy Craig's second step. See, e.g., Lawson, 2008 WL 111155, at *5. To the extent that the ALJ

8

specifically discussed Barnes's statements about T.J.'s ability to interact and relate with others, the ALJ's observations apply equally to Barnes's statements about T.J.'s ability to care for himself. See Tr. 153 (function report dated March 20, 2008 noting that T.J.'s impairments affect his habits and ability to take care of personal needs); Tr. 181 (function report dated February 17, 2009 noting that T.J.'s impairments do not affect his habits and ability to take care of personal needs); Tr. 56–57 (Barnes's testimony indicating that T.J. has trouble with personal hygiene and getting dressed); Tr. 170 (teacher questionnaire indicating that T.J. has "no problem" taking care of his personal hygiene and caring for physical needs, including dressing and eating); Tr. 199 (same). Accordingly, the court rejects Barnes's argument.

## II.

In sum, the court GRANTS the Commissioner's motion for judgment on the pleadings [D.E. 29], DENIES Barnes's motion [D.E. 25], and AFFIRMS the Commissioner's final decision.

SO ORDERED. This **1$** day of January 2014.

JAMES C. DEVER III
Chief United States District Judge